### Mayme E. Marble, Appellant, v. Estate of Mattie M. Marble, Appellee.

Signatures—*sufficiency of evidence to show lack of genuineness.* Upon the question of the genuineness of the signature of a testatrix to a purported statement of account, offered to substantiate a claim by relatives against her estate, evidence, consisting of testimony of witnesses who had seen the signature of testatrix, expert opinion based on a comparison of genuine signatures, numerous admittedly genuine signatures introduced for comparison by the court and certain circumstantial matters, *held* to show that the signature in question was not that of testatrix.

Appeal from the Circuit Court of McLean county; the Hon. Edward Barry, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed January 4, 1922.

Herrick & Herrick and Oglevee & Franklin, for appellant.

Hall, Martin, Hoose & DePew and Fifer & Bohrer, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

John Marble, a resident of Bloomington, Illinois, died in 1864, leaving him surviving his widow, Martha A. Marble, and five children, John Marble, Jr., Mattie M. Marble, Delia Guyles, Will Marble and Walter Marble, as his only heirs at law, and in and by his last will and testament gave all his property to his widow. John, Jr., died about 40 years ago, leaving no widow or children. Delia Guyles died in St. Joseph, Michigan in 1891, childless, and by will gave all her property to Mattie M. Marble. Mrs. Martha A. Marble died in 1901 and Will Marble died single in 1910, and no administration was held upon the estate of either.

Walter E. Marble went to New Mexico in the seventies, married appellant Mayme E. Marble, engaged in the mining business and for several years resided at Kingston, New Mexico, where he died in 1895, intestate, and leaving him surviving appellant Mayme E. Marble, his widow, and Walter, Jr., Grace, Ray and Meredith Marble, his children and only heirs at law.

John Marble's estate consisted of a secondhand store in Bloomington. Mattie M. Marble and her mother took over the management and operation of the business. Mattie M. was thrifty, industrious and a good business manager, and by her efforts, together with her legacy from Delia Guyles, had accumulated an estate of approximately $120,000 when she died testate in 1919, having never married.

By her last will and testament she bequeathed $19,-000 in Liberty Bonds to the family of her deceased brother Walter, $15,000 of bonds being given to Grace and $1,000 each to the other four members of the family. By the will some small bequests were given to other persons and the balance of the estate was given to the Girls' Industrial Home of Bloomington.

It is claimed by appellants that on September 15, 1892, Mattie M. Marble executed, with her mother,

M. A. Marble, signing as witness, and delivered to Walter and Mayme E. Marble a written instrument as follows:

"Mrs. M. A. Marble and Mattie M. Marble

In account with—

Walter E. Marble and Mayme E. Marble.

| | | |
|---|---|---:|
| 1879 | To cash (from Mayme E. Marble) used in purchase of the Graff grocery buildings—Las Vegas—New Mexico. Title taken in name of M. A. Marble.. | $800.00 |
| 1887 | Cash used in purchase of home in Kingston, New Mexico. Deed in name of Mattie M. Marble........... | $400.00 |
| 1889 to 1891 | Mining work on 'The Little Jimmy,' 'The Little Annie,' and other mining properties in Sierra Co., New Mexico, for shares owned by Mrs. M. A. Marble ......................... | $2000.00 |
| 1890 | Cash paid for Stone Post Office building, purchased for $1400.00 and owned by Mayme E. Marble one year, also additions to same by W. E. Marble, $1050.00. Title given to Mattie Marble ......................... | $2450.00 |
| 1891 | Tunnel and exploration work on "The Chicago" mining property, Sierra Co., New Mexico. For shares of Mrs. M. A. Marble ...................... | $1500.00 |
| 1891 | 400 shares ($25.00) entire stock of 32 mile telephone line, Sierra Co., New Mexico, built and owned by W. E. Marble, turned over to Mattie M. Marble in trust.................... | $10,000.00 |
| 1891 | 1-3 of Delia Guyles' legacy left to W. E. Marble in trust with Mattie M. Marble—compromise for .......... | $10,000.00 |
| | | $27,150.00 |

"St. Joseph, Mich.

Thursday, Sept. 15, 1892.

"I acknowledge the above statement and claim of

accounts and now enter them at full stated value into the family estate, with the mutual understanding that said estate is to be held in clear title by me; and to be managed by me during my life as trustee; the estate to finally pass to the natural heirs of our mother, Mrs. M. A. Marble; failing which the above claim is to be paid from the estate with interest at legal rate.

"I hereby agree to begin the education now, in boarding school of two of the grandchildren, paying all expenses from family estate; and also to allow my brother Walter at least $15.00 per week from this date.

Mattie M. Marble.

Witness:
M. A. Marble.
Kingston, New Mexico, Nov. 1st, 1892.
We accept this settlement and agreement.

W. E. Marble,<br>Mayme E. Marble."

A claim was filed in the county court of McLean county by appellant against the estate of Mattie M. Marble, based upon the foregoing instrument. A trial in the county court resulted in the allowance of the claim in the sum of $65,930. An appeal was taken to the circuit court where a trial before the court without a jury resulted in a judgment for appellee against appellant in bar, from which judgment this appeal was taken.

Appellee's contentions are: First—That the instrument was not executed by the deceased and was not her genuine signature. Second—There was no consideration to support the instrument. Third—The claim was barred by the statute of limitations and laches. Fourth—That there was no trust *res* and that the instrument was too indefinite and uncertain to create a trust. Fifth—That the claim was not properly presented or filed in the county court and could not be introduced as evidence to show that it had been filed within the year provided by law. Sixth—Recovery

cannot be had from the estate of Mattie M. Marble. Seventh—Mattie M. Marble could not bind the family estate. Eighth—There was no proof that the claim had not been paid. Ninth—That the estate of Mattie M. Marble does not, nor ever did owe claimants anything.

In the view which we take of this case it will be only necessary to discuss the first of these contentions. The evidence in the record is quite voluminous and is practically all upon the question as to whether the instrument in question was genuine or a forgery.

On the hearing appellant produced fourteen lay witnesses, who testified that in their opinion the signature to the instrument sued on was a genuine signature of the deceased. Appellee produced ten lay witnesses, who testified that in their opinion it was not the genuine signature of the deceased. The force of the greater part of this testimony was very greatly weakened by the fact that the witnesses were giving opinions founded upon vague recollections of a mental picture of Mattie M. Marble's signature seen at some remote time. For instance, one witness who 25 years before the trial had received two or three letters from her, although he had never seen her write and the letters had been destroyed years ago, testified as to his opinion upon this subject. Very few of the witnesses knew anything of her writing in 1892, and those who did could at best have but very indistinct recollection.

On October 5, 1892, Mattie M. Marble placed one of the children of Walter and Mayme Marble in a boys' school at Woodstock, Illinois, and paid his expenses therein during that school year, and it is contended that this is a circumstance that strongly tends to corroborate the genuineness of the writing in question. In our opinion it does not have such effect. The writing provides that Mattie M. Marble should at once begin the education of two of the grandchildren in boarding school. The evidence only shows that she

sent one for one year, which was far from a compliance with the terms of the writing.

The evidence also shows that under date of October 10, 1895, Mattie M. Marble wrote a letter to Mayme E. Marble in which she said: "I enclose the $10.00 draft which I have sent you each week and will send you the money for the month's rent next week. Walter says you do not mention the receipt of the drafts each week but I think likely you forget to do so and the return drafts here always show you have received same." It is contended that this letter is a recognition of the obligation created by the writing. This letter was written shortly before Walter's death and after he had been bedfast, requiring constant care day and night at the home of Mattie M. Marble, for over six weeks. The amount stated in the letter as being sent weekly is $10 and not $15 as called for in the writing. The letter does not show how long she had been sending the $10 weekly. It does show, however, that Mattie M. Marble was doing for Walter "all that medical skill could devise or the most watchful care suggest." It also shows that she had procured the services of three doctors and that she was paying the rent of the home in which Mayme was living during his illness. No claim was ever made against the estate of Walter for any of these expenses or services. It was stipulated upon the trial that within a few weeks before her death, Mattie M. Marble gave to Grace, a daughter of Mayme Marble, $3,500. In our opinion this letter in question, instead of showing a compliance with the writing of September 15, 1892, shows that Mattie M. Marble, in doing what she did, was prompted by motives of generosity and affection for her brother and his family.

Upon the trial it was stipulated that the claimants have been all the time since the purported execution of the instrument in question, people of limited means financially, except their rights and interests, if they

have any, in the claim sued on. The evidence shows that Mattie M. Marble wrote frequent letters to appellant and her family, and while eight envelopes addressed to members of her family, upon which appear Mattie M. Marble's signature, are introduced in evidence, none of the letters which were sent therein are produced.

If the instrument of September 15, 1892, was a genuine undertaking on the part of Mattie M. Marble, it was violated by her in 1892, and it seems hardly probable that, limited in means as were Walter and his family, evidence of some claim, made prior to the death of Mattie M. Marble, would not have been forthcoming.

We do not consider the fact that Mattie M. Marble paid for one year's schooling for one of the grandchildren or the recital of the letter as to the weekly payment of $10 as tending to prove the genuineness of the instrument in question as if the instrument was forged later than 1900, as claimed by appellee, then naturally the party interested in having the forgery committed would know of such letter and such payments.

Appellant called as witnesses three experts who, after comparison of the disputed signature with admittedly genuine signatures, gave it as their opinion that the disputed signature was the genuine signature of Mattie M. Marble. Appellee called four experts who, after a like comparison, gave it as their opinion that the signatures of Mattie M. Marble and M. A. Marble to the instrument of September 15, 1892, was a forgery.

In *Opp v. Pryor*, 294 Ill. 538, the court said with reference to expert testimony: "That class of evidence, however, is generally discredited and regarded as the most unsatisfactory part of judicial administration. This is with good reason, because the expert is often a hired partisan and his opinion is a response to a pecuniary stimulus. The opinion has the sanction

of an oath, but lacks the substantial safeguard of truth applied to testimony concerning facts observed by a witness which is afforded by the criminal law since the opinion is the result of reasoning, and no one can be prosecuted for defective mental processes.''

While this is true with reference to expert opinion evidence, we have frequently found the testimony of experts to be of great value in calling the attention of the court to the existence of facts which might and probably would otherwise have escaped the attention of the court.

There were introduced in evidence as standards for comparison writings bearing the admitted genuine signature of Mattie M. Marble as follows: forty-eight checks drawn by her upon the McLean county bank during the years 1910 to 1917; a lease signed by her in 1906; an agreement signed in 1912; eight envelopes with return address written in the years from 1901 to 1904; two post cards and four letters written to a protégé, 1915 to 1917; letter to Mayme Marble heretofore mentioned, dated August 10, 1895; will of Mattie M. Marble dated June 18, 1918, and codicil thereto dated August 12, 1919, each of which contains two of her signatures; petition for the probate of the will of Delia Guyles, July, 1891; oath and bond each signed August 24, 1891; inventory, September 17, 1891; two petitions for hearing report, one November 25, 1891, and one March 27, 1893; additional inventory February 20, 1892; two reports of account, one November 25, 1891, and one April 22, 1893, each containing two signatures, and all of said last-mentioned papers having been filed in the estate of Delia Guyles in the probate court of Berrien county, Michigan. All these exhibits together with the instrument of September 15, 1892, have been certified to this court for our inspection and we have carefully compared each of these exhibits with the signature to the document in question.

From a careful consideration of all the evidence in

the record, we are of the opinion that some time after the year 1893, Mattie M. Marble entirely changed the character of her signature, and that while the signature in question bears a close resemblance to the later signatures, there is a marked difference between it and the signatures to the papers filed in the probate court in 1891-2-3, which cover the period of the alleged signing of the instrument of September 15, 1892, and that the signature in question has characteristics found in none of the genuine signatures. We, therefore, find that the signature in question is not the genuine signature of Mattie M. Marble.

The judgment is affirmed.

*Affirmed.*